IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHEILA L. NOZAR                                                                                      PLAINTIFF

V.                                            NO. 15-3012

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Sheila L. Nozar, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff filed her current application for DIB on March 27, 2012, alleging an inability to work since May 5, 2010, due to a bulging disc in her neck, difficulty breathing, degenerative disease in her spine, and pain and weakness in her arms and hands. (Tr. 149-150, 169, 173). Plaintiff's date last insured is December 31, 2016. (Tr. 14). An administrative hearing was held on May 9, 2013, at which Plaintiff appeared with counsel and she, her husband, and her friend testified. (Tr. 28-86).

By written decision dated November 22, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – degenerative disc disease of the cervical spine, degenerative joint disease of the right

1

shoulder status post-surgery, and bilateral carpal tunnel syndrome, right worse than left. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she can perform only occasional reaching and frequent, but not constant, handling and fingering bilaterally. In addition, she must avoid concentrated exposure to hazards, including no driving as part of work.

(Tr. 15). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform the job of rental clerk. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 22, 2015. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the

2

record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See

3

20 C.F.R. §404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) The ALJ erred by attributing to treating physicians the ability of Plaintiff to perform work without them being presented the question; 2) The ALJ erred by overly relying on the opinions of the non-examining physician; 3) The ALJ erred by failing to acknowledge that medications are effective only when Plaintiff is not undertaking work activities; 4) The ALJ erred by failing to appropriately consider the effects of Plaintiff's shoulder/arm pathology in combination with her carpal tunnel syndrome on her ability to grasp and finger; and 5) The ALJ erred by using Plaintiff's performance of insignificant activities as a reason to find her less than credible. (Doc. 12).

Before addressing Plaintiff's arguments, the Court will briefly discuss Plaintiff's medical records. Beginning with the onset date, on May 5, 2010, Dr. Thomas Knox performed the following procedures on Plaintiff's right shoulder: arthroscopy, right shoulder; arthroscopic subacromial bursectomy; arthroscopic release coracoacromial ligament; arthroscopic abrasion acromioplasty; and arthroscopic partial lateral claviculectomy. (Tr. 280). In subsequent follow-up visits to Dr. Knox, Plaintiff was reported as doing very well, and underwent physical therapy. (Tr. 281-284, 378). By August 31, 2010, Dr. Knox reported that Plaintiff's range of motion was normal, she was feeling good, and was very happy, and he discharged Plaintiff. (Tr. 284).

Plaintiff presented herself again to Dr. Knox on November 4, 2010, reporting that her shoulder was fine, but complaining of some soreness at the base of her neck, and pain radiating down into the hand, thumb and index finger. (Tr. 285). At that time, her grip strength was reported as looking good. (Tr. 285). X-rays revealed a little narrowing of C5-C6. (Tr. 285). On December 10, 2010, a MRI of Plaintiff's cervical spine revealed minimal posterior disc bulge at C5-C6, and to an even lesser extent at C6-C7. (Tr. 286). There was no significant spinal canal compromise, neuroforaminal compromise or nerve root impingement. (Tr. 286). Dr. Knox recommended a neurosurgical evaluation on December 14, 2010. (Tr. 287).

On January 14, 2011, Plaintiff saw Dr. Brad Thomas, of Little Rock Neurosurgery Clinic. (Tr. 293). Plaintiff was reported as having good strength throughout bilateral upper and lower extremities, and Dr. Thomas noted Plaintiff's "very small, mild bulge at C-6, but no significant disc herniation or neural impingement." (Tr. 293). Dr. Thomas noted that Plaintiff had reported using a borrowed TENS unit, which helped some. Dr. Thomas set Plaintiff up with her own TENS unit, and was going to obtain an EMG and nerve conduction study of her bilateral upper extremities by Dr. Bruce D. Robbins, of Twin Lakes Neurology. (Tr. 293-294). Dr. Thomas believed it was possible that Plaintiff had carpal tunnel syndrome. (Tr. 294). On February 17, 2011, Dr. Robbins conducted a nerve conduction study/EMG Report. (Tr. 300). The impression was:

1. The nerve conduction study is consistent with bilateral carpal tunnel syndrome, right side more than the left. There is also mild slowing of the ulnar nerve at the elbow but the absolute conduction velocity is still within normal limits.

2. The EMG needle examination shows mild neurogenic changes in a left C5 innervated muscle. These changes are chronic.

5

(Tr. 301).

When Plaintiff returned to see Dr. Thomas on February 25, 2011, she reported that the TENS unit did help slightly, but she continued to have some pain between her shoulders, and had bilateral hand pain. (Tr. 291). She was then back at full-duty at work. (Tr. 291). Dr. Thomas believed she had carpal tunnel syndrome and recommended bilateral hand splints, placed her back at full-duty, placed her at MMI with a zero percent (0%) impairment, and gave her a prescription for soma and hydrocodone. (Tr. 291).

Plaintiff presented to Dr. Scott M. Schlesinger, of Arkansas Neurosurgery Brain & Spine Clinic, P.A., on April 9, 2011, complaining of interscapular pain going into her neck and right shoulder, and headaches. (Tr. 303). At that time, her range of motion in the cervical spine was diminished by 30-40% and her range of motion of the joints of the upper extremities was full without pain. (Tr. 304). Plaintiff had normal 5/5 strength and function in bilateral proximal and distal muscles of upper and lower extremities. (Tr. 305). Dr. Schlesinger found she had cervical degenerative changes and a minimal bulge at C5-6 to the right, and he did not see anything of surgical significance. (Tr. 306). Dr. Schlesinger felt Plaintiff should be managed conservatively, and wanted to see how she responded to cervical epidural injections with therapy, a TENS unit and a cervical traction unit to see if the conservative measures could help her with her pain. (Tr. 306-307). He noted that she might benefit from facet protocol if these did not work. (Tr. 307). A MRI performed on April 19, 2011, revealed:

1. Straightening of the cervical curvature is noted which is most likely related to muscle spasm

2. Central disc protrusion/osteophyte complex is seen at C5/C6 effacing the ventral subarachoid space without causing cord compression or cord signal abnormality

6

    3.  No other significant abnormality is seen

(Tr. 382-383). Plaintiff thereafter underwent physical therapy. (Tr. 308). After receiving her first and second cervical epidural injections, she reported to Dr. Schlesinger that the first injection seemed to help significantly for three to four days and the pain returned. (Tr. 309). After her third injection, on June 30, 2011, Plaintiff reported to Dr. Schlesinger that the injections seemed to be helping a little and that the pain was no longer constant. (Tr. 310).

    Plaintiff reported to Dr. Schlesinger on July 26, 2011, that she continued to have neck pain, but it was better and there was no radicular pain, but when she extended her neck, there was increased pain. (Tr. 311). Dr. Schlesinger decided to proceed with facet injections at C5-6 and C6-7, done on the right. (Tr. 311). On September 19, 2011, Dr. Schlesinger wrote that there was nothing to give any permanent partial disability rating based upon the AMA guidelines, as there was no clear objective anatomical abnormalities present. (Tr. 314). He also wrote that he felt Plaintiff's issue was a bulging disk, and that there was no evidence of any significant neural compression. (Tr. 316). He did not feel that surgical intervention was indicated and that she also had a small C7-T1 protrusion. (Tr. 316).

    On March 15, 2012, Plaintiff presented herself to Dr. Maxwell G. Cheney, of Mountain Home Medical Group, for a pulmonary function test, and on March 20, 2012, x-rays of Plaintiff chest were performed. (Tr. 319, 322). Plaintiff was diagnosed with chronic obstructive pulmonary disease (COPD), no acute process was seen in either lung, and the degree of COPD was small-to-moderate. (Tr. 322).

    On June 11, 2012, non-examining physician, Dr. Bill Payne, completed a Physical RFC Assessment, and found that Plaintiff would be able to perform light work. (Tr. 347-354). On September 13, 2012, Dr. Valeria Malak confirmed this assessment. (Tr. 358).

On August 8, 2012, Plaintiff began seeing Dr. Abraham, of Abraham Medical Center, complaining that her pain was worse with more activity. (Tr. 362). Dr. Abraham concluded that Plaintiff was not a candidate for surgery, and that another physician had suggested Rhizotomy, but her insurance would not pay for it. (Tr. 361). Dr. Abraham suggested trying tramadol and hydrocodone as a compromise. (Tr. 361). On October 24, 2012, Plaintiff reported using a TENS unit from 3-6 times per day. (Tr. 360). On December 20, 2012, Plaintiff advised Dr. Abraham that her medications made the pain bearable. (Tr. 397). On January 23, 2013, Plaintiff reported to Dr. Abraham that she did a lot of cooking for Christmas and had pain and swelling in her right thumb and forefinger, and continued to have pain in her neck and right arm. (Tr. 397). On February 22, 2013, Plaintiff reported no new problems to Dr. Abraham, and stated that her arms and hands continued to hurt and ache. (Tr. 398).

On March 27, 2013, Plaintiff complained to Dr. Abraham of a stiff neck, weak arms, and that the back of her head hurt. (Tr. 398). Dr. Abraham refilled her pain medications. (Tr. 398).

On June 18, 2013, Plaintiff underwent a General Physical Examination by Dr. Anandaraj Subramanium. (Tr. 400). At that time, the range of motion in Plaintiff's extremities were reported as normal; she had some limitations in her spine range of motion; she could perform all limb functions except she could not walk on her heel and toes or squat/arise from a squatting position; and she had 100% normal grip in both hands. (Tr. 403). Dr. Subramanium concluded that Plaintiff had moderate to severe limitation on prolonged walking, standing, handling, lifting, carrying and fingering. (Tr. 405).

On July 8, 2013, Plaintiff again saw Dr. Schlesinger, and reported that the facet injection gave her relief for 8-10 months, but the pain had returned. (Tr. 410). At that time, her range of motion of the joints of the upper extremity was full without pain. (Tr. 412). Dr. Schlesinger believed the best plan was to proceed with a MRI of the Cervical Spine and EMG/Nerve Conduction Study of the bilateral upper extremities, and if the MRI revealed no neurological problems as before, he would proceed with facet injections, since they provided significant relief the last time. (Tr. 415). When Plaintiff saw Dr. Schlesinger next on September 3, 2013, he concluded that he would proceed with cervical epidural steroid injections with post injection physical therapy. If pain persisted, he would proceed with facet protocol, cervical traction unit, and a prescription for Norco. (Tr. 423). Regarding Plaintiff's carpal tunnel syndrome (CTS), he concluded that she had minimal symptoms in her hands and did not feel surgery was necessary, but would give her a prescription for wrist splints. (Tr. 423). He recommended Plaintiff return to light duty work. (Tr. 423).

In his decision, the ALJ discussed in detail the treatment Plaintiff received for her shoulder, neck, and hand pain. He discussed the objective medical records, which revealed minimal disc bulges at C5-6 and C6-7, and minimal carpal tunnel syndrome. (Tr. 18). The ALJ also discussed Plaintiff's daily activities, noting that Plaintiff assisted with the care of her disabled husband, cooked, did housework, went to the grocery store, attended church one to three times a week, and visited her mother and children's houses. (Tr. 19). The ALJ also discussed the fact that Plaintiff's pain appeared to be well controlled with prescription medications and other pain relief modalities, and that she had not alleged any side effects from the use of her medication. (Tr. 20). The ALJ found it noteworthy that none of Plaintiff's treating physicians placed restrictions on her. (Tr. 20).

A. **Combination of Impairments**:

Plaintiff argues that the ALJ erred by failing to appropriately consider the effects of her shoulder/arm pathology in combination with her carpal tunnel syndrome on her ability to grasp and finger.

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 13). He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 13). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 13). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 15). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

In addition, the ALJ noted that Plaintiff's shoulder had normal range of motion on August 31, 2010, and that on June 18, 2013, Plaintiff had 100% grip strength bilaterally. (Tr. 16, 20). Finally, the ALJ's RFC limited Plaintiff to occasional reaching and frequent, but not constant, handling and fingering bilaterally, so it is clear he considered Plaintiff's impairments in combination.

Plaintiff's argument on this issue is without merit.

B. **Credibility Analysis**:

Plaintiff argues that the ALJ erred by using her performance of "insignificant activities" as a reason to find her less than credible. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 19). As indicated earlier, the ALJ discussed Plaintiff's daily activities, and in her Function Report, dated April 8, 2012, Plaintiff stated that she helped care for her disabled husband, who had undergone nine back surgeries, prepared meals daily, did laundry once or twice a week, and tried to do some cleaning every day or so. (Tr. 198). She also reported that she shopped for groceries once a week or every other week, and went to church one to three times a week, depending on how she felt. (Tr. 199). She reported that she went to her children's houses every once in a while, and to her mother's house two or three times a week. (Tr. 199).

11

The ALJ also properly considered the fact that none of Plaintiff's treating physicians placed any functional restrictions on her activities which would preclude work activity with the previously mentioned restrictions. (Tr. 19). The ALJ recognized Plaintiff's pain and discomfort, and correctly noted that the mere inability to work without some degree of pain or discomfort, minimal to mild nature, did not necessarily constitute disability.

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination:

Plaintiff argues that the ALJ erred by attributing to treating physicians her ability to perform work without them being presented the question; that the ALJ erred by overly relying on the opinions of non-examining physicians; and that the ALJ erred by failing to acknowledge that medications were effective only when Plaintiff was not undertaking work activities.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth

12

specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

With respect to Plaintiff's treating physicians, Plaintiff argues that her treating physicians were never asked to assess her with restrictions or to state what she could or could not do on a vocational basis. However, on May 12, 2010, a report by Stacy A. Kennedy, APN to Dr. Knox, indicated Plaintiff was allowed to return to work "when she feels like it," and as noted above, Dr. Knox discharged Plaintiff on August 31, 2010. (Tr. 281, 284). On February 25, 2011, Dr. Thomas placed her back "at full duty." (Tr. 291). Finally, on September 3, 2013, Dr. Schlesinger recommended Plaintiff return to "light duty work," and if

13

light duty was not available, he recommended she stay off work until further treatment. (Tr. 423). Clearly, even though Plaintiff's treating physicians may not have been asked specifically about her vocational abilities, there is substantial evidence to show that they considered and determined Plaintiff would be able to perform light work.

With respect to the opinions of the non-examining physicians, the ALJ gave great weight to Dr. Bill Payne's opinion, but based upon the hearing evidence, also found Plaintiff to be more limited than determined by Dr. Payne. (Tr. 21). As stated earlier, the ALJ is permitted to base his RFC determination on a non-examining physician opinion. In this case, although one of Plaintiff's examining physicians, Dr. Subramanium, found Plaintiff had moderate to severe limitations on prolonged walking, standing, handling, lifting, carrying and fingering, the ALJ gave sufficient explanation for giving Dr. Subramanium's conclusion little weight, because his conclusion was inconsistent with his own examination records. In addition, state agency medical consultants are highly qualified physicians and experts in Social Security disability evaluation, and the medical records as a whole are consistent with Dr. Payne's conclusions. 20 C.F.R. §404.1527(c)(4) and (e).

Plaintiff argues that the ALJ erred when he determined Plaintiff's medications were effective. As stated earlier, no physician placed any limitations on Plaintiff and continued to treat her conservatively. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999)(lack of physician-imposed restrictions militates against a finding of total disability). In addition, Plaintiff reported that a facet injection effectively treated her pain for eight to ten months. (Tr. 410). The Court finds the record as a whole supports the conclusion that medications have been relatively effective in controlling Plaintiff's symptoms.

**IV.   Conclusion**:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 9th day of June, 2016.

                                              */s/ Erin L. Setser*
                                              HONORABLE ERIN L. SETSER
                                              UNITED STATES MAGISTRATE JUDGE